**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**CORNELIUS RIEGEL,**

                                     **Plaintiff,**

               **v.**                                              **1:05-CV-1503**
                                                                      **(FJS/RFT)**

**STATE OF NEW YORK through the NEW YORK**
**STATE DEPARTMENT OF TRANSPORTATION;**
**THOMAS J. MADISON, JR., in his capacity as**
**Acting Commissioner of the New York State Department**
**of Transportation; WAYNE SHUTTS; and**
**MYLES MCDONALD,**

                                     **Defendants.[1]**

_____

**APPEARANCES**                              **OF COUNSEL**

**JACOBOWITZ & GUBITS, LLP**              **JOSEPH R. RANNI, ESQ.**
158 Orange Avenue
P.O. Box 367
Walden, New York 12586-0367
Attorneys for Plaintiff

**OFFICE OF THE NEW YORK**               **KAREN MARCOUX MANKES, AAG**
**STATE ATTORNEY GENERAL**
The Capitol
Albany, New York 12224
Attorneys for Defendants

**SCULLIN, Senior Judge**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

     In his complaint, Plaintiff alleges that Defendants discriminated against him because of

_____

     [1] Although this is not how Plaintiff designated the Defendants in the caption of his
complaint, based upon his description of the parties under the heading "The Parties" in his
complaint, the Court has reconstructed the caption accordingly.

his gender and retaliated against him for complaining about the discrimination in violation of

Title VII, New York Human Rights Law, and 42 U.S.C. § 1983.

Currently before the Court is Defendants' motion to dismiss the complaint pursuant to

Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.


## II. BACKGROUND[2]

Plaintiff, at all relevant times, was an employee of Defendant New York State

Department of Transportation, holding the position of Grade 10 Lead Worker.  Defendant

Thomas Madison, Jr. was the acting Commissioner of Defendant New York State Department of

Transportation.  Defendant Wayne Shutts was Plaintiff's supervisor at Defendant New York State

Department of Transportation's Martindale facility located in Craryville, New York.  Defendant

Myles McDonald was also Plaintiff's supervisor at the same facility.

Plaintiff contends that on two occasions one of his co-workers Don Coombs sexually

harassed him by attempting to expose Plaintiff by tugging on the bottom of his shirt and trying to

pull it over Plaintiff's head.  Plaintiff further asserts that he believes that Defendant New York

State Department of Transportation had previously investigated Mr. Coombs for sexual

harassment when he exposed his genitalia on a lunchroom table directed at a co-worker in the

presence of others.  Plaintiff complained to his supervisors about the harassment on several

occasions, including June 18, 2003, January 2004, April 9, 2004, and April 23, 2004; and, as a

result of his complaints, his supervisors, Defendants Shutts and McDonald, among others,

---

[2] Since this is a motion to dismiss, the Court accepts as true the allegations in Plaintiff's complaint.

retaliated against him.

Specifically, Plaintiff alleges that, on January 22, 2004, Supervisor Lee Haywood escorted him to the shop floor and publicly advised him that he was demoted from his position of Lead Worker and that his duties were reassigned to an individual two grades his junior.  On January 26, 2004, Defendant Shutts also criticized Plaintiff for making his complaints.

In addition, Plaintiff asserts that he was placed in the way of serious harm on December 14 and 15, 2004, when Defendant McDonald directed him to perform miles of semi-stationary road work on the Taconic State Parkway without the necessary safety equipment on the dark, serpentine, two-lane road without shoulders.  Plaintiff requested a "back-up" truck, which was typically provided, to perform the function of a physical barrier to oncoming traffic to protect the workers.  Defendant McDonald refused his request, and Plaintiff complained to Senior Safety Officers.  After this incident his supervisor, Fran Pizza, berated him and told him to leave.  He was disciplined for failing to follow a chain of command and for not leaving the Supervisor's office when he was directed to do so.

On December 22, 2004, Defendant Shutts stated to Plaintiff, "Don't worry, you (Plaintiff) won't be continuing with the State," while insulting and physically shoving Plaintiff.  Defendant Shutts also made several public statements in 2004 and 2005 to Plaintiff's co-workers to be careful because Plaintiff could sue them for sexual harassment.  In addition, Plaintiff contends that Defendant Shutts criticized him because he did not ask Defendant Shutts about the particular tool used to check fluid levels on a particular vehicle on January 20, 2005.

Plaintiff was also disciplined on September 20, 2005, allegedly for requesting mechanical advice when a pre-operative inspection revealed excessively low hydraulic fluid on a backhoe

that Plaintiff was required to load on a trailer and transport by truck.  Furthermore, Plaintiff was

disciplined when a pre-operative inspection revealed excessively low fluids on a truck.  He was

criticized, questioned, without required union representation, and disciplined when it was falsely

claimed that he refused a direct order to drive.

On October 5, 2005, three superiors, including Defendants Shutts and McDonald,

cornered Plaintiff and criticized him for performing work "by the book" and for failing to take

short cuts in conducting the mandated pre-operation safety checks of the large highway vehicles

that Plaintiff operates.  This attack caused Plaintiff to suffer heart palpitations, chest pain and

high blood pressure requiring treatment at an emergency room.  Finally, Plaintiff states that,

despite his repeated requests, he has not been restored to his supervisory role as "Lead Worker,"

which continues to be assigned to junior and less experienced colleagues.

Plaintiff asserts that all of these incidents demonstrate that Defendants are engaged in a

coordinated policy and practice of systematic retaliation against him for having raised complaints

of discrimination and retaliation and that the intent of their policy is to compel his wrongful

termination despite his more than twenty years of at least satisfactory performance.  Plaintiff

claims, further, that, although he complained about the discrimination and retaliation to his

superiors and to Human Resources personnel, Defendant New York State Department of

Transportation neither conducted a good faith investigation nor took any corrective action and

that the retaliation continues.  Finally, Plaintiff states that, as a result of Defendants' retaliation,

he has suffered and continues to suffer emotional distress, including physical manifestations,

high blood pressure, chest pains, anxiety, loss of sleep, and effects upon his professional and

personal relationships.

Based upon these factual allegations, Plaintiff asserts the following five causes of action:[3]

> (1) against **Defendant**[4] for violations of 42 U.S.C. § 2000-e *et seq.* ("Title VII") for "discriminatory, reckless, wrongful, willful and malicious sexual harassment of the Plaintiff by managers, agents, servants and/or employees of the Defendant NYSDOT [which] were discriminatory"
>
> (2) Against **Defendant New York State Department of Transportation** for violations of 42 U.S.C. § 2000-e *et seq.* ("Title VII") for retaliation against Plaintiff
>
> (3) Against **Defendants New York State Department of Transportation, Shutts and McDonald** for discrimination in violation of New York Executive Law § 291 *et seq.* ("New York Human Rights Law")
>
> (4) Against **Defendants New York State Department of Transportation, Shutts and McDonald** for retaliation in violation of New York Executive Law § 291 *et seq.*
>
> (5) Against **Defendants New York State Department of Transportation, Shutts and McDonald** for violation of 42 U.S.C. § 1983 for "wrongful, willful and malicious discrimination and/or retaliation" against Plaintiff

*See, generally,* Complaint.

---------------------

[3] Attached as Exhibit 1 to the affidavit of Plaintiff's counsel, Joseph J. Ranni, is a document that he describes as a "true and correct copy of the Plaintiff's complaint in this action." *See* Affidavit of Joseph J. Ranni, dated August 28, 2006 ("Ranni Aff."), at ¶ 1. However, despite Mr. Ranni's declaration, this document is not an exact copy of the complaint that Plaintiff filed in this action. *Compare* Dkt. No. 1 and Exhibit 1. Although the differences in these documents are not significant, they do make the analysis of some of Plaintiff's claims difficult. For example, in the Exhibit 1 complaint, the first claim for relief is entitled "First Claim for Relief on Behalf of Plaintiff against Defendants NYS and Madison," *see* Ranni Aff. at Exhibit 1, whereas in the complaint that Plaintiff filed in this action, the same claim is entitled "First Claim for Relief on Behalf of Plaintiff," *see* Dkt. No. 1. There are similar differences in the manner in which Plaintiff has entitled his other claims in the two documents. Since the "official" complaint is the one that Plaintiff filed in this action, i.e., Dkt. No. 1, the Court will refer to that document as the Complaint and analyze Plaintiff's claims as presented in that document.

[4] Plaintiff does not specify against which Defendant he asserts this claim.

-5-

As relief, Plaintiff seeks "wages, other compensation and lost benefits through the time of judgment, for compensatory damages, for emotional distress, for the reasonable attorney's fees incurred in the prosecution of this action, [and] for punitive damages . . . ." *See id.* at WHEREFORE Clause.

## III. DISCUSSION

**A.    Defendants' motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure**

### *1. Plaintiff's § 1983 claim against Defendant State of New York/New York State Department of Transportation*

"It is now settled that a state cannot be sued under § 1983, *Will v. Michigan Dept. of Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989), and that this rule applies 'to States or governmental entities that are considered "arms of the state" for Eleventh Amendment purposes.'" *Komlosi v. New York State Office of Mental Retardation & Developmental Disabilities*, 64 F.3d 810, 815 (2d Cir. 1995) (quotation, citation and footnote omitted).

In his complaint, Plaintiff explicitly states that he is asserting his § 1983 claim against, among others, New York State Department of Transportation. *See* Complaint at Fifth Claim. Plaintiff clearly cannot maintain this claim against the State of New York or any of its agencies, including the Department of Transportation. Therefore, the Court grants Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendant State of New York/New York State Department of Transportation.

### 2. Plaintiff's New York Human Rights Law claims against Defendant State of New York/New York State Department of Transportation

This Court, as well as other district courts in this Circuit, has held that "[n]othing in the [New York Human Rights Law] provides any basis for finding that New York State has waived Eleventh Amendment immunity thereunder." *Pazamickas v. New York State Office of Mental Retardation & Development Disabilities*, 963 F. Supp. 190, 196 (N.D.N.Y. 1997) (citations omitted). Therefore, Plaintiff cannot maintain his state-law claims against Defendant State of New York/New York State Department of Transportation. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law claims against Defendant State of New York/New York State Department of Transportation.

### B. Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure

### 1. Motion to dismiss standard

In *Swierkiewicz v. Sorema N.A.*, 354 U.S. 506 (2002), the Supreme Court held that "an employment discrimination complaint need not include [specific facts establishing a prima facie case of discrimination under the framework that the Court set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)] and instead must contain only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 508 (quoting Fed. R. Civ. Proc. 8(a)(2)). The Court explained further that it had "never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss." *Id.* at 511.

Moreover, the Court noted that, "under a notice pleading system, it is not appropriate to

require a plaintiff to plead facts establishing a prima facie case because the *McDonnell Douglas* framework does not apply in every employment discrimination case . . . [and] the precise requirements of the prima facie case can vary depending on the context and were 'never intended to be rigid, mechanized, or ritualistic.'" *Id.* at 511-12 (quotation and other citations omitted). Furthermore, the Court stated that "imposing [this] heightened pleading standard in employment discrimination cases [would] conflict[] with Federal Rule of Civil Procedure 8(a)(2), which provides that a complaint must include only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* at 512. The statement that Rule 8(a)(2) requires "must simply 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" *Id.* (quotation omitted). The Court also noted that Rule 8's "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* (citations omitted). Finally, the Court stated that, "[g]iven the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id.* at 514 (quotation omitted).[5]

Applying these principles to the case before it, the Court found that the complaint in question had easily satisfied Rule 8's requirements "because it [gave the defendant] fair notice of the basis for [the plaintiff's] claims." *Id.* The Court noted that the plaintiff had alleged that he had been terminated because of his national origin in violation of Title VII, detailed the events

---

[5] The Court further explained that, "[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56." *Swierkiewicz*, 534 U.S. at 514.

leading up to his termination, provided relevant dates, and included the nationalities of at least

some of the relevant persons involved in his termination.  *See id.*

### 2. Plaintiff's § 1983 claim against Defendants Shutts and McDonald

Section 1983 permits a suit against a "person who, under color of any statute, ordinance,

regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of

the United States . . . to the deprivation of any rights, privileges, or immunities secured by the

Constitution and laws" of the United States.  42 U.S.C. § 1983.  However, "[s]ection 1983 'is not

itself a source of substantive rights.'"  *Patterson v. County of Oneida*, 375 F.3d 206, 225 (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  "It merely

provides 'a method for vindicating federal rights elsewhere conferred . . . .'"  *Id.* (quotation

omitted).  "A § 1983 action may not, however, be brought to vindicate rights conferred only by a

statute that contains its own structure for private enforcement, such as Title VII."  *Id.* (citing

*Saulpaugh v. Monroe Community Hospital*, 4 F.3d 134, 143 (2d Cir. 1993) ("A plaintiff cannot

use Section 1983 to gain perceived advantages not available to a Title VII claimant")).  Thus, if a

Title VII plaintiff wants to bring a concurrent § 1983 claim, he may do so as "'long as the § 1983

claim is based on a distinct violation of a constitutional right.'"  *Id.* (quotation and other citation

omitted).

In his complaint, Plaintiff does not allege – or even mention – a distinct violation of a

constitutional right as a basis for his § 1983 claim.  Rather, it appears that the only basis for that

claim is the violation of his statutory rights under Title VII.  As such, he cannot maintain a

concurrent § 1983 claim.  Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's

§ 1983 claim against Defendants Shutts and McDonald.

### 3. Plaintiff's Title VII claims against Defendants Madison, Shutts and McDonald

In his Title VII claim for discrimination, Plaintiff refers to "Defendant" without specifying which Defendant.  However, he concedes, as he must, that he cannot maintain his Title VII claims against the individual Defendants.  *See Mandell v. County of Suffolk*, 316 F.3d 368, 377 (2d Cir. 2003) (holding that "under Title VII individual supervisors are not subject to liability" (citations omitted)).  Therefore, to the extent that Plaintiff's complaint can be construed to assert a Title VII claim against the individual Defendants, the Court grants Defendants' motion to dismiss these claims against Defendants Madison, Shutts and McDonald.

### 4. Plaintiff's New York Human Rights Law claims against Defendants Shutts and McDonald

The New York Court of Appeals has held that "[a] corporate employee, though he has a title as an officer and is the manager or supervisor of a corporate division, is not individually subject to suit with respect to discrimination based on . . . sex under New York's Human Rights Law  . . . if he is not shown to have any ownership interest or any power to do more than carry out personnel decisions made by others." *Patrowich v. Chemical Bank*, 63 N.Y.2d 541, ___, 473 N.E.2d 11, 12 (1984).  "[S]everal courts from this Circuit [, however,] have distinguished *Patrowich* by relying on an NYHRL provision which makes it a discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any acts forbidden under [the NYHRL],' N.Y. Exec. L. § 296(6) . . . ." *Stamm v. N.Y. City Transit Auth.*, No. 04-CV-2163, 2006 WL

-10-

1027142, *13 (E.D.N.Y. Feb. 7, 2006).  However, those courts that have made that distinction "have held only that 'a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYHRL].'"  *Id.* (quotation omitted).

In the present case, Plaintiff does not allege that any of the individual Defendants "actually participated" in the sexual harassment that Mr. Coombs perpetrated on him.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law sexual harassment claim against the individual Defendants.

To support his state-law retaliation claim, Plaintiff alleges that, after he complained about the sexual harassment, Defendants Shutts and McDonald retaliated against him on numerous occasions by, among other things, demoting him, criticizing him in front of his co-workers for complaining about the harassment, assigning him to physically dangerous work without proper protection, and taking unsupported disciplinary actions against him.  These allegations are sufficient, at this stage of the litigation, to maintain Plaintiff's state-law retaliation claims against Defendants Shutts and McDonald.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's New York Human Rights Law retaliation claims against Defendants Shutts and McDonald.[6]

---

[6] The Court notes that, although Plaintiff names Thomas Madison, Jr. as a Defendant in this action, he does not assert any allegations of wrongdoing on his part.  Therefore, the Court holds that, even under the liberal "notice pleading" requirements of Rule 8, Plaintiff's complaint is insufficient to hold Defendant Madison personally liable with respect to Plaintiff's state-law claim for retaliation.  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's New York Human Rights Law retaliation claim against Defendant Madison.

### 5. Plaintiff's Title VII claims against Defendant State of New York/New York State Department of Transportation

#### a. Plaintiff's Title VII sexual harassment claim

"A hostile work environment [sexual harassment] claim must allege two elements: 1) that the conduct is 'sufficiently severe or pervasive' to create an 'abusive' workplace 'permeated' with discriminatory 'intimidation, ridicule and insult' that 'unreasonably interferes' with an employees [sic] work performance and 2) that there is a specific basis for imputing that hostile conduct to the employer." *Darling v. Potter*, No. 3:04CV1467, 2005 WL 2045951, *4 (D. Conn. Aug. 25, 2005) (quotation and other citations omitted).

In his complaint, Plaintiff alleges only two occasions on which Mr. Coombs sexually harassed him. *See* Complaint at ¶ 12. He also states that he believes that Defendant New York State Department of Transportation had previously investigated Mr. Coombs for sexual harassment after he "expos[ed] his genitalia on a lunchroom table directed at a co-worker in the presence of others." *See id.* at ¶ 13.

Even if the Court assumes that the two occasions on which Mr. Coombs sought to expose Plaintiff by pulling on the bottom of Plaintiff's shirt and attempting to pull it over Plaintiff's head constitute sexual harassment, these are the only two incidents about which Plaintiff complains, other than the incident in the lunchroom that was not directed at him. These incidents were undoubtedly inappropriate and in poor taste. However, there were only two such incidents, and, even keeping in mind the lenient pleading standards of Rule 8, these allegations are insufficient to make it plausible that Plaintiff would be able to prove any set of facts consistent with these allegations to demonstrate that he is entitled to relief with respect to his sexual harassment claim.

*See Phones Plus, Inc. v. Hartford Fin. Servs. Group, Inc.*, No. 3:06CV01835, 2007 WL 3124733, *2 (D. Conn. Oct. 23, 2007) (holding that, "[i]n order to survive a motion to dismiss, the factual allegations must 'raise a right of relief above the speculative level' and 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965, 1974 (2007))).  Therefore, the Court grants Defendants' motion to dismiss Plaintiff's sexual harassment claim under Title VII against Defendant State of New York/New York State Department of Transportation.


### b. Plaintiff's Title VII retaliation claim

In a complaint setting forth a claim of retaliation, a plaintiff must allege that he engaged in a protected activity of which his employer was aware, that the employer took some adverse action against him,[7] and that there was a causal connection between the protected activity and the adverse action.  *See, e.g., Taylor v. Polygram Records*, No. 94 CIV. 7689, 1999 WL 124456, *20 (S.D.N.Y. Mar. 8, 1999) (citation omitted).

In the present case, Plaintiff alleges that he filed a complaint with the appropriate agencies and complained to his supervisors about Mr. Coombs' sexually-harassing behavior and that, shortly after he complained, his supervisors took adverse actions against him, including demoting him from his Lead Worker position, assigning him to physically dangerous jobs

---

[7] In *Burlington Northern & Santa Fe Ry. Co. v. White*, ___ U.S. ___, 126 S. Ct. 2405 (2006), the Supreme Court held that "[t]he scope of [Title VII's] anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."  *Id.* at 2414. In other words, an "adverse action" is an action "that a reasonable employee would have found . . . materially adverse," i.e., that the action "'well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'"  *Id.* at 2415 (quotation omitted).

without proper protection, falsely criticizing him, and wrongfully disciplining him.  Under Rule 8's pleading requirements, these allegations are sufficient to withstand Defendants' motion to dismiss because they provide Defendants with fair notice of the basis for Plaintiff's retaliation claims.

Moreover, despite Defendants' assertion to the contrary, to demonstrate that the filing of his human-rights complaint and his complaints to his supervisors were protected activities, Plaintiff need not show that he "successfully described in that complaint conduct amounting to a violation of Title VII." *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) (citation omitted).  He only "need[s] . . . [to] demonstrate that [he] had a '*good faith, reasonable belief* that the underlying challenged actions . . . violated the law.'" *Id.* (quotation and citation omitted); *see also Figueroa v. Paychex, Inc.*, No. CIV. 99-797-ST, 1999 WL 717349, *9 (D. Or. Sept. 7, 1999) (noting that "[t]he Ninth Circuit allows a plaintiff to bring a retaliation claim under Title VII if she reasonably believes that the underlying discrimination is actionable even if it eventually is not" (citations omitted)).

What constitutes a "good faith, reasonable belief" is not always easy to define.  In *Moyo v. Gomez*, 40 F.3d 982 (9th Cir. 1994), the court defined the "reasonable belief" test for Title VII retaliation claims as follows:

> The reasonableness of [a plaintiff's] belief that an unlawful employment practice occurred must be assessed according to an objective standard – one that makes due allowance, moreover, for the limited knowledge possessed by most Title VII plaintiffs about the factual and legal bases of their claims. . . . [A] reasonable mistake may be one of fact or law. . . . [I]t has been long established that Title VII, as remedial legislation, is construed broadly. . . . This directive applies to the reasonableness of a plaintiff's belief that a violation occurred, as well as to other

-14-

matters.

*Id.* at 985 (internal citation omitted).

Applying this standard to the case before it, the *Figueroa* court found that, although

> the law covering hostile work environment theory claims is fairly
> well settled . . . [and] [a]ll courts agree that one comment from a
> co-worker is usually insufficient to rise to the level of a hostile
> work environment[,] . . . the "reasonable belief" standard used for
> Title VII retaliation claims in the Ninth Circuit is very low.  Most
> non-lawyers will be ignorant of the nuances of the law governing
> employment discrimination.  Because courts must make "due
> allowance of the limited knowledge possessed by most Title VII
> plaintiffs about the factual and legal bases of their claims," almost
> all retaliation claims under Title VII premised on a mistake of law
> will certainly survive a motion to dismiss.

*Figueroa*, 1999 WL 717349, at *12.

In this case, Plaintiff alleges two occasions on which Mr. Coombs physically accosted

him in what Plaintiff believed to be a sexually harassing manner.  In addition, Plaintiff points to

another incident in the lunchroom, which he alleges constituted another incident of sexual

harassment, although it was not directed at him.  Although the Court has concluded that the two

incidents about which Plaintiff complains are insufficient to make it plausible that Plaintiff

would be able to prove that he is entitled to relief with respect to this sexual harassment claim,

this does not equate to a finding that Plaintiff had no reasonable basis to believe that Mr.

Coombs' behavior toward him constituted sexual harassment.

Furthermore, assuming that Plaintiff reasonably believed that he had been subjected to

sexual harassment, then it easily follows that Plaintiff has alleged sufficient facts from which a

reasonable juror could infer that the adverse actions that Plaintiff's supervisors took against him

after he complained – given the temporal proximity of those actions to the complaints – were in

retaliation for those complaints.  Therefore, the Court denies Defendants' motion to dismiss Plaintiff's Title VII retaliation claims against Defendant State of New York/New York State Department of Transportation.


### IV. CONCLUSION

Accordingly, after carefully considering the entire file in this case, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendant State of New York/New York State Department of Transportation for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's § 1983 claim against Defendants Madison, McDonald and Shutts for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's New York Human Rights Law claims against Defendant State of New York/New York State Department of Transportation for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's Title VII claims against Defendant Madison for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiff's New York Human Rights Law

-16-

sexual harassment and retaliation claims against Defendant Madison for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

      **ORDERS** that Defendants' motion to dismiss Plaintiff's New York Human Rights Law sexual harassment claim against Defendants McDonald and Shutts for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

      **ORDERS** that Defendant's motion to dismiss Plaintiff's New York Human Rights Law retaliation claim against Defendants McDonald and Shutts for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **DENIED**; and the Court further

      **ORDERS** that Defendants' motion to dismiss Plaintiff's Title VII sexual harassment claim against Defendant State of New York/New York State Department of Transportation for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is **GRANTED**; and the Court further

      **ORDERS** that Defendants' motion to dismiss Plaintiff's Title VII retaliation claim against

Defendant State of New York/New York State Department of Transportation is **DENIED**; and the Court further

      **ORDERS** that this case is referred to Magistrate Judge Treece for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: January 14, 2008
      Syracuse, New York

                  _____
                  Frederick J. Scullin, Jr.
                  Senior United States District Court Judge